[Crim. No. 7940. Second Dist., Div. One. Aug. 6, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE EDMOND ROSS et al., Defendants and Appellants.

Alexander Googooian for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—In an information filed in Los Angeles County the defendants were charged in three counts with burglary. The defendant Ross was charged in a separate information with a single count of burglary. Defendants were represented by counsel at all stages of the proceeding. It was stipulated that the four counts of burglary would be consolidated for the purposes of trial. Each defendant pleaded not guilty. Trial by jury was waived. Both defendants were found guilty as charged and the burglary in each instance was found to be of the second degree. A probation report was ordered. Probation was denied and each defendant was sentenced. Thereafter the defendants came into court without counsel and requested a reconsideration of their application for probation and a supplemental probation officer's report. The public defender was appointed counsel for defendants at such time. The motion to reconsider the denial of probation and for a supplemental probation officer's report in each case was denied.

The appeal was from the judgment, sentence and orders denying probation. The judgment and sentence are synonymous. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) ▮▮▮ The purported appeals from the order denying probation and from the order denying the motion to reconsider such an order are dismissed. Such orders are not appealable. (*People* v. *Mason,* 109 Cal.App.2d 87, 89 [240 P.2d 64].)

A résumé of some of the facts is as follows: members of the Police Departments of Los Angeles and Fullerton (Orange County) had been investigating a number of telephone booth burglaries. Coin boxes in such booths were discovered to be missing. The losses occurred during the latter part of 1960 as to counts 1, 2 and 3, and the early part of 1961 as to count 4. The defendants had no right by reason of employment or otherwise to enter or take such coin boxes.

Roy Hill was arrested in December 1960 by the police of Alhambra and was charged with burglarizing telephone booths. He was on bail. On January 10, 1961, he voluntarily went with policemen from Fullerton to that city in order to answer their inquiries about telephone-booth burglaries in Fullerton. Hill implicated his stepson, David Vale, and George Ross, the appellants herein, as having been involved in numerous telephone-booth burglaries. Hill told Officer Kreitz of the Fullerton police, and Howard Mountjoy, a special agent for the telephone company, that appellants had purchased a

1957 Ford automobile and were installing in it a secret compartment for hiding coin boxes and were going to take a trip because "it was getting too hot" in California. This information was given to Lieutenant Lauritzen of the Burglary Division, Los Angeles Police Department.

Kreitz located the 1957 Ford automobile in Garden Grove at about 1:40 a. m. of January 11, 1961, and it was ascertained that the information supplied by Hill as to the secret compartment therein was correct. Appellants were not located at that time but Jack Vale, who had been implicated by Hill as his accomplice, was found and arrested. Lieutenant Lauritzen was informed of this information by telephone and the arrest of appellants occurred shortly thereafter. Other information given by Hill with reference to another person proved to be reliable.

At about 1:50 a. m. January 11, 1961, Officer Bates, pursuant to direction from his superior, Lieutenant Lauritzen, went to the house of George Ross and immediately placed him under arrest for burglary. Ross volunteered to show the officer certain photographic equipment. Miss Torr, a girl friend of Ross, was present at the search of Ross' apartment. Officer Bates, in the presence of Officer Smith, at about 2:50 a. m., upon learning that Ross had a car downstairs, asked "if he minded if we looked at it." Ross replied in the negative. Bates asked for the keys, to which Ross replied, "I'll get them." Ross led the officers to a white Lincoln car and unlocked the same. The officers made a search of the car and found wire "picks" and coins in a sock behind the ash tray in the car. The picks were introduced into evidence.

At about 3 a. m. Lieutenant Lauritzen arrested David Vale. Between 3 a. m. and 4 a. m. at the Van Nuys Police Station Ross identified a "pick" as one which he had made and tried out on telephones. He indicated that he had opened the last telephone in question and that the money in the sock in the automobile was the proceeds of that burglary. Ross offered to show the officers the booth which had been burglarized. At about 5:30 a. m. Ross directed Bates and Van Doren, a special agent of the telephone company, to the booth described in count 4. He told the officers that he had removed the coin box from the booth so located and had thrown it from the car. Later Ross was booked.

Shortly before noontime on January 13, 1961, Officer Smith asked David Vale to open the trunk of his car, a white Chrysler, which the police had not been able to locate in the

first instance. Vale permitted the officers to search the front part of the car without objecting and then stated, "I don't want to open the trunk. If I do, why, I know I'm going to jail for sure." Smith replied, "Well, you've indicated that you would open it up, so you may as well do it." Vale, without further comment, opened the trunk. Therein was a metal box containing "picks," coin boxes and other parts of telephones.

At the Van Nuys Police Station Vale told Officer Smith that Ross had picked all of the locks and that he, Vale, had acted as a cover. Vale illustrated in detail their method of operation, stating that they had taken $10,000 and perhaps $20,000 in such a manner in California, Washington and Nevada. Vale pointed out to Officer Smith the particular "jobs" he had done at the locations described in counts 1, 2 and 3.

On January 15, 1961, David Vale, in the presence of Ross, told the officers of their methods. Later Ross showed the officers the same locations as previously pointed out by Vale.

At the probationary hearing the judge considered the application of each defendant separately. Ross had a record in Nevada, apparently for possession of a concealed weapon. There was also a statement that Ross was found with explosives in his car. It was indicated that Vale also had a record.

After thoroughly considering the proceedings in this particular case, and the probation officer's report, the judge denied the application of each of the defendants for probation.

Neither defendant ever took the witness stand in the superior court.

Appellants now assert that the evidence which was introduced was the product of an unlawful search and seizure and without the evidence in question there was not sufficient evidence to convict either of them. Furthermore the appellants assert that the probationary hearing was conducted illegally and that the judge abused his discretion.

There was probable cause for each of the arrests. "A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony." (*People* v. *Torres,* 56 Cal. 2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *Lorenzen* v. *Superior Court,* 150 Cal.App.2d 506, 512 [310 P.2d 180].)

Probable cause has been defined in many cases (See *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366

P.2d 823] ; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].)

Lieutenant Lauritzen told of the information which he had received from the Fullerton police officers which formed the basis for his belief that a felony had been committed by the appellants. Upon this information, coupled with the knowledge of the police that there had been many recent telephone booth burglaries, Lieutenant Lauritzen arrested Vale and Officers Bates and Smith, under the direction of Lieutenant Lauritzen, arrested Ross. The officers were not required to go beyond the information received from the official sources. (*People* v. *Stewart,* 189 Cal.App.2d 176, 178 [10 Cal.Rptr. 879].) The appellants cannot rely upon *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689] for here the officers testified fully upon the whole matter and the identity of the informer Hill was fully disclosed. There was no manufacturing of any evidence in this case.

In any event Hill was an admitted telephone-booth burglar who was out on bail and he voluntarily told the officers and special agent that appellants were in on a separate series of telephone-booth burglaries. Hill was the stepfather of David Vale. His information about the Ford automobile developed to be true. Furthermore it was indicated to the officers that appellants were about to take leave of the State of California. In other words, "the situation confronting the police reasonably appeared to be one which required immediate action." (*People* v. *Holguin,* 145 Cal.App.2d 520, 523 [302 P.2d 635].) We have no doubt that the evidence under the circumstances was properly admitted.

It is also true that under the evidence, the trial judge could have believed that under the circumstances the appellants consented to the search. (*People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241].) It is a question of fact for the trial court to determine. (*People* v. *Cunningham,* 188 Cal.App.2d 606, 609 [10 Cal.Rptr. 604].) In any event there was apparently no serious protest to any of the searches. (*People* v. *Villarico,* 140 Cal.App.2d 233, 238 [295 P.2d 76].)

Even, however, if it be assumed that the physical evidence should not have been introduced it would appear that the remaining evidence was such as to be sufficient to sustain the convictions. Ross told the officers about picking the telephones and how he had gotten certain money. He took the officers to the scene of the burglary described in count 4 and gave detailed information about how he had committed the

crime. Later he showed an officer the locations of the other burglaries charged in the information. Vale pointed out the location of the burglaries he had participated in and told of how "George does all of the picking, and I act as the cover, and cover him up while he does the picking." Each appellant demonstrated to the officers the methods used in picking the various locks. Incriminating admissions made voluntarily are admissible in evidence. (*Rogers* v. *Superior Court,* 46 Cal.2d 3, 10-11 [291 P.2d 929]; *People* v. *Hicks,* 165 Cal. App.2d 548, 550 [331 P.2d 1003]; *People* v. *Tobin,* 143 Cal. App.2d 1, 9 [299 P.2d 353].)

With reference to the contention concerning the probationary hearing proceedings, we have read the record and there was no abuse of discretion by the judge. A defendant has no right to be granted probation, it is a privilege, an act of grace or clemency. (*In re Osslo,* 51 Cal.2d 371, 377 [334 P.2d 1].)

There was no showing made in this case of any abuse of any discretion. Hearsay matter in a probation officer's report is continually accepted and such is contemplated by section 1203 of the Penal Code. (See also *People* v. *Valdivia,* 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832]; *People* v. *Warren,* 175 Cal.App.2d 233, 237-247 [346 P.2d 64].)

The appellants were never prevented from presenting their story about what occurred. They saw fit, however, never to relate it to the judge. The probation officer recommended against probation and the judge heard the evidence and thoroughly considered the report of the probation officer; furthermore he had an opportunity to observe the defendants throughout the trial; he properly denied their application.

The judgment of conviction in each case of each defendant is affirmed.

Wood, P. J., and Lillie, J., concurred.