[Crim. No. 9612.   Second Dist., Div. Four.   Nov. 6, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. MURRAY HOWARD JACKSON, Defendant and Appellant.

Maxwell S. Keith and Cooper & Nelsen for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was convicted of two counts of abortion and one of murder in the second degree. Probation was denied and he was sentenced to state prison on each count for the term prescribed by law, the sentences to run concurrently. Minimum sentences were recommended by the trial court. The judgment was affirmed by this court and a petition for a hearing by the Supreme Court was denied. (*People* v. *Jackson,* 217 Cal.App.2d 161, 167 [31 Cal.Rptr. 356].) Upon the filing of the remittitur in the trial court defendant reapplied for probation. The trial court ordered a supplemental probation report from the probation department, read and considered the original and supplemental probation reports and, after a hearing, denied defendant's reapplication and ordered into execution the sentence originally imposed.

Defendant brings this appeal, under Penal Code section 1237, subdivision 3, from the order denying his reapplication for probation. Section 1237, subdivision 3, relates to orders made after judgment affecting the substantial rights of a party. Defendant contends that, at the hearing on his reapplication for probation, the trial court erroneously concluded that he was ineligible for probation and, therefore, did not consider his reapplication on its merits.

The record reveals that the trial court, after reviewing the various probation reports in the matter, stated: ''The

Court is strongly of the opinion that the ends of justice will best be served by granting this defendant probation. The Court would grant such probation but feels that the present state of the law is such as to deprive the court of jurisdiction to do so."

A determination of defendant's eligibility for probation depends upon the proper interpretation to be given to section 1203 of the Penal Code. Such determination must be made in the light of the facts surrounding defendant's conviction of murder in the second degree.

Defendant was convicted, under the felony-murder doctrine, because the death of the deceased occurred during the perpetration of the crime of abortion. Death was found to have been caused by an injection of an anesthetic known as sodium pentothal which had been administered preparatory to the performance of the abortion.[1]

Section 1203 of the Penal Code, in pertinent part provides: "Probation shall not be granted to any person who shall have been convicted of . . . murder, . . . and who at the time of the perpetration of said crime . . . or at the time of his arrest was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same), *nor to a defendant who used or attempted to use a deadly weapon* upon a human being in connection with the perpetration of the crime of which he was convicted, nor to one who in the perpetration of the crime of which he was convicted *wilfully* inflicted great bodily injury or torture, . . ." (Italics added.)

Defendant maintains that he did not willfully inflict great bodily injury in the perpetration of the crime, nor did he use a deadly weapon, within the meaning of section 1203.

Two issues are raised, (1) whether the injection of sodium pentothal which caused the death of the deceased can be construed as a willful infliction of great bodily injury upon the person of the deceased, and, (2) whether the sodium pentothal or the surgical instruments used to perform the abortion were used as a deadly weapon.

There can be no doubt that defendant did in fact inflict great bodily injury because death was the proximate result of defendant's conduct, and, as pointed out in *People* v. *Superior Court,* 199 Cal.App.2d 303, 309 [18 Cal.Rptr. 557], "[M]urder can never be committed without the infliction of great bodily injury." However, the statute requires

[1]See *People* v. *Jackson, supra,* 217 Cal.App.2d 161, for complete statement of facts.

that the injury be *willfully* inflicted. The Attorney General argues, in effect, that the term "willfully" has no significance.

Section 7, subdivision 1, of the Penal Code defines the term as follows: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another. . . ."

The "act" done, to which the term "willfully" necessarily refers in section 1203, is the infliction of great bodily injury, in the instant case, the death of the deceased. The record clearly indicates that defendant did not purposely or willingly seek the death of the victim. True, he intended to procure illegally a miscarriage, which, when the victim died, supplied the necessary malice aforethought to establish the offense, under the felony-murder doctrine, as second degree murder. There was, however, no evidence to support a finding that defendant intended that death result. At most, a finding could be made that the death resulted from defendant's negligent acts. Certainly, the facts of a particular abortion case may show a deliberate butchery of the victim as to bring it within the mandatory provision of section 1203. (See *People* v. *Darrow,* 212 Cal. 167, 186 [298 P. 1]; *People* v. *Navarro,* 74 Cal.App.2d 544, 552 [169 P.2d 265].) That this is not such a case is evidenced by the trial court's statement that it felt that defendant is deserving of probation.

The Attorney General advances the proposition that the medical instruments and the anesthetic used by defendant on the person of the decedent were "deadly weapons" within the meaning of section 1203.

Whether they were deadly weapons under section 1203 depends on the intent with which they were used. A gun or knife is not considered a deadly weapon, as a matter of law, when used defensively, negligently or accidentally and death results. (*People* v. *Southack,* 39 Cal.2d 578 [248 P.2d 12].) The court in the *Southack* case, *supra,* theorized that a deadly weapon is not "used," within the purview of section 1203 of the Penal Code, if the fatal wound was inflicted negligently, as opposed to intentionally. (See also *People* v. *Johnson,* 140 Cal.App.2d 613 [295 P.2d 493].) In *People* v. *Alotis,* 60 Cal.2d 698 [36 Cal.Rptr. 443, 388 P.2d 675], the court affirmed the trial court's granting of probation even though the defendant was convicted of assault with a deadly weapon (Pen. Code, § 245), arising from an affray where the

victim suffered several gunshot wounds. Our Supreme Court stated, at page 706-707:

"In the present case there is no evidence that the gun was accidentally discharged, but there is ample evidence that it was discharged unintentionally and without volition on the part of defendant. . . . .

"Thus, while the evidence does not show that the gun was discharged as a result of negligent handling, as was the case in *Southack, supra,* 39 Cal.2d 578, there is ample evidence that there was an absence of the intent to kill—that is, that the shooting was involuntary and nonvolitional. The question is whether nonvolition can be equated with negligence—if so, under the rule announced in *Southack, supra,* section 1203 has no application, even if the offense were a felony. This in turn depends upon whether the language 'used as a deadly weapon' excludes a nonvolitional act. Certainly, it can be argued that *Southack, supra,* stands for that proposition. Therefore, in this sense, the gun was not 'used' as a deadly weapon, and section 1203 has no application."

In the instant case the evidence established that the illegal operation was consented to by the deceased; the deceased's death was accidentally, although negligently caused; and the surgical instruments and drugs were not used with the intention of causing great bodily injury. If a gun or knife is not "used as a deadly weapon" where the wound is unintentionally or negligently inflicted, then surgical instruments or drugs used by a doctor in the performance of an abortion should come within the same rule of law.

The Attorney General contends that defendant brings this appeal from a nonappealable order and therefore we should dismiss the appeal.

It is the general rule that no appeal lies from an order denying probation or from an order denying a motion to rehear an application for probation. (*People* v. *Mason,* 109 Cal.App.2d 87, 89 [240 P.2d 64] ; *People* v. *Ross,* 206 Cal. App.2d 542, 543 [24 Cal.Rptr. 1] ; *People* v. *Erickson,* 74 Cal. App.2d 339, 340 [168 P.2d 417].) Defendant maintains that the order denying his reapplication for probation was an order made after judgment substantially affecting his rights and thus is appealable under Penal Code section 1237, subdivision 3. He points out that the question of his eligibility for probation could not have been raised by him in his original appeal from the judgment reported in *People* v. *Jackson, supra,* 217 Cal.App.2d 161.

The trial judge gave no indication at the time of the hearing on defendant's original application for probation that he felt powerless to grant defendant probation, as was the case at the hearing on defendant's reapplication for probation. Although the trial judge may well have believed that defendant was ineligible for probation at the time of the original proceedings, any such uncommunicated opinion afforded no basis to urge error on appeal. ▪ It is axiomatic that matters not of record cannot be urged on appeal. (*People* v. *Brown*, 184 Cal.App.2d 588 [7 Cal.Rptr. 717]; *People* v. *Franklin*, 202 Cal.App.2d 528 [21 Cal.Rptr. 29].)

▪ The Attorney General places particular reliance upon *People* v. *Erickson, supra,* 74 Cal.App.2d 339, 340, wherein the court held that an order denying a motion to rehear an application for probation after a judgment had become final, was not an order made after judgment from which a defendant may appeal, but was equivalent to a second denial of the defendant's original application. The instant case is clearly distinguishable. Here a hearing was held on defendant's reapplication, and the court, after considering both the original and supplemental probation reports and concluding that defendant was a fit subject for probation, denied probation on the erroneous belief that defendant was ineligible within the meaning of Penal Code section 1203.

The order denying probation is reversed and the cause remanded with directions to the trial court to consider defendant's reapplication for probation on its merits and to grant or deny the same as in the exercise of its judicial discretion it may deem proper.

Burke, P. J., and Kingsley, J., concurred.