[Crim. No. 4328. Third Dist. July 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPHINE LOCKWOOD, Defendant and Appellant.

Roy H. Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Michael Gessford, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.[*]—Defendant Lockwood appeals[1] from judgment of conviction, after jury trial, of count I, violation of section 11500, Health and Safety Code (possession of opium) and count II, violation of the same section (possession of codeine).

QUESTIONS PRESENTED

1. Were defendant's arrest and the search incidental thereto unlawful?

2. On the motion for consideration under section 3051 of the Welfare and Institutions Code, should the court have stricken portions of the probation report?

3. Should count II of the information have been dismissed?

RECORD

A jury found defendant and Roland Pitts guilty of two violations of section 11500 of the Health and Safety Code— possession of opium and possession of codeine. Defendant Lockwood moved that the matter be referred to the probation officer and also that she be considered a subject for commitment under section 3051 of the Welfare and Institutions Code. After reading the probation report, the court denied probation and found defendant unfit for commitment under section 3051. She was then sentenced to the state prison for the term prescribed by law. Defendant Lockwood's appeal alone is before us.

EVIDENCE

In the middle of June the partially decomposed body of one Ronald La Voie was found in the apartment of a woman using the name of Terry Spencer but who was defendant Josephine Lockwood.[2] The coroner's report indicated that the cause of

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Defendant appealed in pro. per. However, on application, this court appointed an attorney to represent her on this appeal. He has briefed the appeal.

[2]Lockwood is not her true name.

death was an overdose of dilaudid. Detective Ronald Cole of the Sacramento sheriff's office, the officer investigating the death, knew that defendant used the name of Terry Spencer, having previously arrested her on narcotics charges. Moreover, the manager of the apartment house where the body was found identified defendant from a photograph as a tenant of the apartment in which the body was found. For approximately two weeks prior to June 26, Cole had been looking for defendant to question her about the matter but was unable to locate her. On June 26 he received information that she was at a bar called the "Glass Jungle." Accompanied by his partner, Officer Tobler, he went there. As they approached the bar, they observed defendant and Pitts sitting in a gray Cadillac parked in the parking lot. As the officers approached, Pitts, who was sitting behind the wheel, saw them, got out, went to the passenger side of the car and defendant slid behind the wheel. By the time the officers, now on foot, approached her, defendant had turned on the ignition. Cole asked her to turn off the ignition and to step out of the car as they desired to talk to her. In a very deliberate, drawn out, slow, affected manner, as if she lacked full control of her faculties, she asked what they wanted to talk to her about. They told her about La Voie. After some hesitation, defendant voluntarily and slowly stepped from the car. As she got out, she swayed and leaned against the car, seeming to have difficulty in standing. Fresh needle marks were visible on her inner arm, an area frequently used by addicts to inject narcotics.

Cole had talked to her on prior occasions, both when she was, and when she was not, under the influence of narcotics. From his observations of her, be believed that she was under the influence of narcotics. When he told her of his belief, she pulled off her sunglasses and said, "I am not under the influence. I haven't had a fix for some time." "Look at my eyes." Both officers noted that her eyes were shiny or glassy and the pupils pinpointed, a condition indicating that she was under the influence of narcotics. Cole could smell no alcohol on her breath. Based on the totality of these observations, defendant was arrested for being under the influence of narcotics. Immediately, the officers searched the car. Pitts, who was the owner of the car, specifically consented to the search of the trunk. As Cole was opening the trunk, defendant shouted a stream of obscenities at him and attempted to slam the trunk shut on his fingers. In the trunk there was found a small, blue, ladies overnight or cosmetic case, match-

ing the two suitcases Cole had previously seen in defendant's apartment. In this small case were various vials and druggists' bottles, several having prescription labels made out to Terry Spencer. Substantial quantities of codeine and opium were found in some of the bottles.

At the trial, defendant, who had been living with Pitts for the last three or four days, testified, claiming that the officers were overly familiar, that they held her arm, which she didn't appreciate. She admitted having been angry and using rather descriptive language. She denied being under the influence of narcotics, ownership or knowledge of the case and its contents. She said that she had taken a couple of tranquilizers.

Pitts testified that although the Cadillac was not registered in his name, he owned it. As his license had been suspended when defendant moved in with him he had given her its keys, so that she had complete access to the car, and had had possession of it on numerous occasions during the preceding week. He denied knowledge of the contents of the trunk and denied having seen one of the bottles on which his fingerprint was found. He stated that defendant was not under the influence of narcotics.

1. The arrest and search were not unlawful.

Defendant contends that there was not reasonable cause for her arrest and therefore the arrest and the search incident thereto were unlawful.

 It is not unreasonable for officers to seek interviews with suspects or witnesses. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) It obviously was not unreasonable for the officers to seek to talk to defendant about a dead body found in her room. Although defendant suggested that she could talk sitting in the car, there was nothing unreasonable in their asking that the interview be outside the car. She voluntarily stepped out of the car. Defendant contends that getting her to step out of the car constituted an arrest and that at that moment the officers had no cause to arrest her.

 Getting defendant to step out of the car did not restrict her liberty of movement in the sense in which *Henry* v. *United States,* 361 U.S. 98 [4 L.Ed.2d 134, 80 S.Ct. 168], cited by defendant, held that restriction of liberty of movement constituted arrest. In *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658], the court pointed out that, while the United States Supreme Court rule

seemed to be that an arrest occurs when an automobile is stopped during a police investigation, "[i]n this state, however, we have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning." ▮ Even though the officers suspected, because of her manner of speaking, that defendant may have been under the influence of narcotics and wanted to see her walk, they had no knowledge of her having committed any crime. Being under the influence of narcotics is a misdemeanor (§ 11721, Health & Saf Code), but mere suspicion that she was under the influence would not justify an arrest but would justify an investigation. The request that she step outside the car so that they could talk to her and to see if the officers' suspicions were well based, was a reasonable one. No force was used, and when one of them opened the car for her, she voluntarily stepped out.

▮ There was no arrest prior to defendant's exit from the car. Her actions thereafter constituted reasonable grounds for her arrest for being under the influence of narcotics, and justified the search thereafter.

▮ ". . . 'As to what constitutes "reasonable cause," there is no formula for its determination, each case being dependent on its own facts and circumstances [Citations]. "Reasonable cause" is defined by our Supreme Court "to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime (citation). . . .'''" (*People* v. *Evans* (1966) 240 Cal.App.2d 291, 297 [49 Cal.Rptr. 501].)

In *People* v. *Rios,* 46 Cal.2d 297 [294 P.2d 39], an arrest was upheld which was based on the officer's noticing marks resembling hypodermic marks on the arm of the defendant, a known narcotics offender. In *People* v. *Amiotte* (1963) 215 Cal.App.2d 176 [30 Cal.Rptr. 102], the arrest, which was based upon the officer's noticing needle marks on the defendant's arms and that defendant's eyes were pinpointed, was upheld. (See also *People* v. *Elliott* (1960) 186 Cal.App.2d 178 [8 Cal.Rptr. 795].)

▮ Among other things, Pitts, the professed owner of the car, gave his consent to the search.[3] And where there is consent, even though the consent to the search was given by only

---

[3]Although the car was registered in another man's name, Pitts claimed to own it.

one of the defendants, such consent suffices. (*People* v. *Jackson,* 191 Cal.App.2d 296, 301 [12 Cal.Rptr. 748].)

The facts justifying the arrest by Officer Cole were quite strong: He knew that defendant had previously used narcotics; although there was no odor of alcohol about her, her speech was slow and deliberate and different from when he had talked to her before, and she had difficulty in standing; fresh needle marks appeared on her inner arm; her eyes were glassy and the pupils were pinpointed.

2. The probation report.

In the report of the probation officer which the court considered on her motion for probation and for commitment under section 3051, Welfare and Institutions Code, are certain statements which defendant contended should not have been considered by the trial judge and which she moved to have stricken from the report on the ground that they were hearsay. These statements were to the effect that reports from other public agencies indicated that defendant probably was involved in a burglary of a pharmacy; that some of the drugs taken were those in Pitts' car; that defendant was present at the time La Voie was given the drug taken in that burglary, the overdose of which caused his death; and that she was present when one Tiner died from a heart attack, in which it was suspected that drugs were involved.

A probation report need not be limited to the facts of the particular offense or offenses of which a defendant has been found guilty. "There is no authority that a probation report may not contain extrajudicial material. Such a report is not evidence." (*People* v. *Overton* (1961) 190 Cal. App.2d 369, 372 [11 Cal.Rptr. 885].) "Hearsay matter in a probation officer's report is continually accepted and such is contemplated by section 1203 of the Penal Code. [Citations.]" (*People* v. *Ross* (1962) 206 Cal.App.2d 542, 547 [24 Cal.Rptr. 1].)

". . . the guilt of a defendant is not an issue in a probation officer's report. In this case defendant had pleaded guilty. The purpose of the report is to assist the court in determining whether a defendant should be granted probation and, if so, the terms thereof. Penal Code, section 1203, provides that: 'The probation officer must thereupon make an investigation of the circumstances surrounding the crime and of the prior record and history of the defendant, must make a written report to the court of the facts found upon such investigation, and must accompany said report with his writ-

ten recommendations, including his recommendations as to the granting or withholding of probation to the defendant and as to the conditions of probation if it shall be granted.' A probation officer could not make an investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. It is clear that Penal Code, section 1203, contemplates the inclusion of hearsay matter in the probation officer's report. Had defendant thought the report insufficient or inadequate he could have presented witnesses to counteract or correct any portion of the report.'' (*People* v. *Valdivia,* 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832].)

The court properly refused to strike any portion of the probation officer's report.

■ Disregarding the portions of the report objected to, it appears that defendant's police record (although this was her first felony conviction), her attitude towards narcotics and narcotic users, and her general attitude, justified, even compelled, that she neither be given probation nor committed under section 3051.

■ '' [W]here the trial court has exercised its discretion and determined that the defendant does not constitute a fit subject for commitment under the section, its finding will not be upset if it is supported by the record. [Citations.]'' (*People* v. *Jolke* (1966) 242 Cal.App.2d 132, 143 [51 Cal.Rptr. 171].)

3. Count II.

■ Defendant moved under section 995, Penal Code, for a dismissal of count II, which charged her with possession of codeine, on the ground that her possession of it was a part of the same transaction as her possession of opium charged in the first count and that to find her guilty of two crimes arising from the same transaction and to punish her therefor would constitute double punishment under section 654, Penal Code, and would deny her due process under both the federal and California Constitutions. There is no merit to her contention.

Defendant's possession of opium is one offense. Her possession of codeine is another and a separate one. Defendant is not being punished two times for a single act within the meaning of section 654.

In *People* v. *Lopez* (1959) 169 Cal.App.2d 344 [337 P.2d 570], the defendant was charged with and found guilty of three separate violations of section 11500, Health and Safety Code—possession of (1) heroin, (2) amidone, and (3) marijuana. The evidence showed that the three drugs were found at the same time when the officers raided the defendant's apartment. The defendant contended that when given a separate sentence on each count, he was punished three times for a single act. The court said (at p. 351): ''Contrary to his contention that defendant's possession of all three was a single act, the possession of each of the three different and distinct types of narcotics, even at the same time, constituted three separate offenses.'' (See also *People* v. *Mandell* (1949) 90 Cal.App2d 93 [202 P.2d 348].)

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.