[Civ. No. 10106. Fourth Dist., Div. One. Jan. 8, 1971.]

CARL O. OLDENKOTT, Plaintiff and Respondent, v.
AMERICAN ELECTRIC, INC., Defendant and Appellant.

**COUNSEL**

Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., and Douglas C. Conroy, for Defendant and Appellant.

Robert E. Krause for Plaintiff and Respondent.

## Opinion

**COUGHLIN, Acting P. J.**—Defendant appeals from a judgment awarding plaintiff $79,055.56 as damages for breach of a contract of employment.

Plaintiff was an inventor of fasteners which are a type of locking device to keep nuts intact on bolts; had obtained two patents on these fasteners; and also had filed a patent application respecting them, which was pending.

On December 29, 1967, defendant, by contract in writing, employed plaintiff as manager of its division known as Oldenkott Fasteners, at a salary of $2,500 per month, for the term of two years, which might be extended an additional two years at the option of plaintiff. Simultaneously, by a contract in writing, plaintiff granted defendant the right and license to manufacture, sell, produce, distribute and use the fasteners covered by his patents and the pending application for patent, which were known as the Oldenkott fasteners. Plaintiff's duties as manager were to promote the sale of the fasteners; establish new accounts; and arrange sources of supply to service these new accounts.

On July 19, 1968, defendant terminated plaintiff's employment. Thereupon plaintiff sued defendant to recover damages, alleging termination of his employment was an anticipatory breach of contract. Defendant asserted it was authorized by the terms of the contract to terminate plaintiff's employment because of his failure to comply therewith, and also because of his refusal to perform duties assigned him by defendant. The case was tried by a jury which found in plaintiff's favor and awarded him damages in the sum of $85,000. Pursuant to stipulation, the amount of the award was reduced to its agreed present value, the sum of $79,055.56.

Defendant, on appeal, presents its contentions in an opening brief and in an "Additional Brief" filed with permission of this court.

In its opening brief defendant seeks reversal on the grounds: (1) the verdict is against the "weight of the evidence" which showed plaintiff was discharged justifiably; (2) the trial court erred in refusing to instruct the jury recovery, if any, should be limited to the balance due on the original two-year term of the contract; and (3) misconduct of plaintiff's counsel which deprived defendant of a fair trial.

The contention the verdict of the jury is against the "weight of the evidence" on the issue whether plaintiff was discharged unjustifiably does not present an issue subject to appellate determination. The "weight of the evidence" to support a verdict is a matter subject to exclusive determination

by the jury. (*Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 246 [259 P.2d 649]; *Shields* v. *Shields,* 200 Cal.App.2d 99, 102 [19 Cal.Rptr. 129].)

■ Assuming defendant's attack upon the "weight of the evidence" to support the verdict, in substance, is an attack upon the sufficiency of the evidence to support the verdict, it is without merit.

Defendant contends, in effect, the evidence establishes as a matter of law it was entitled to terminate the contract under a provision thereof authorizing such because of plaintiff's inefficiency and failure to meet standards of performance and conduct normally expected of executive employees having his position or responsibility; and also was justified in terminating the contract because of plaintiff's insubordination in failing to comply with the requests of his superiors.

The contention plaintiff's inefficiency and failure to meet the standards of performance and conduct expected of him is premised on the claim during the six and one-half months he was employed defendant had not received a single order for fasteners. However, there is substantial evidence establishing defendant's officers refused to cooperate with plaintiff in any sales program; refused to give him realistic price lists for the sale of fasteners in large quantities, which were essential to promote sales; and countermanded instructions which plaintiff intended to provide a sales force and an advertising campaign. The evidence, directly and by inference, supports the conclusion any asserted inefficiency or failure to meet the standards of performance normally expected of an executive in plaintiff's position was attributable to conduct on the part of defendant's officers rather than to plaintiff.

The contention defendant also was authorized to terminate plaintiff's employment because of his insubordination is premised upon the claim the evidence dictates the conclusion he refused to deliver to defendant's office a copy of the pending application for patent, and also refused to produce a "secret agreement" between himself and a Japanese organization known as the Kyodo Group which held a license to use his patent rights in Japan. There is substantial evidence supporting the conclusion plaintiff did not refuse to furnish defendant with a copy of the pending patent application; a copy of the application had been submitted to defendant's attorney and by the latter returned to plaintiff's patent attorney; plaintiff suggested to defendant's officers they obtain a copy of the application from his attorney, and authorized them to do so; and there was no secret agreement between plaintiff and the Kyodo Group.

In light of the foregoing, and also in light of other evidence in the record, defendant's contention the evidence is insufficient to support the finding im-

plied in the verdict plaintiff's discharge was unjustified is without merit. To the contrary, there is adequate substantial evidence supporting an implied finding plaintiff was discharged unjustifiably and his discharge was an anticipatory breach of the contract.

■ Defendant's contention the court erred in refusing to instruct the jury plaintiff was entitled to recover damages, if at all, only for the balance of the original two-year term of employment is premised upon the claim the option for the additional two-year term should not be considered in computing the damages.

Plaintiff testified if his contract had not been terminated he intended to exercise the option extending the term for an additional two years; he was 42 years of age; and he was in good health.

In support of its position, defendant cites the decision in *Schmidt* v. *Beckelman,* 187 Cal.App.2d 462, 468-471 [9 Cal.Rptr. 736]. Reliance upon this decision is misplaced because it involves an action for damages for breach of an option to purchase real property, and holds the "harshly rigid" rule of damages prescribed by Civil Code section 3306 for breach of an agreement to convey real property, i.e., in case of bad faith damages may be awarded on the basis of the "difference between the price agreed to be paid and the value of the estate agreed to be conveyed," does not apply until the option is exercised. The rule of damages applicable to the case at bench is not that prescribed by Civil Code section 3306.

The court instructed the jury respecting the measure of damages in accord with the rule stated by this court in *Erler* v. *Five Points Motors, Inc.,* 249 Cal.App.2d 560, 562 [57 Cal.Rptr. 516]; and also instructed, for the purpose "of determining the 'total unexpired term of the contract' you may, if you find that Mr. Oldenkott would have exercised the option provided for in the employment contract, consider the term of such contract to be for a period of four years," which followed the rule stated and applied in *Detroit Graphite Co.* v. *Hoover,* 41 F.2d 490, 494, and *Dixie Glass Co.* v. *Pollak* (Tex.Civ.App.) 341 S.W.2d 530, 541 [91 A.L.R.2d 662].

In *Schmidt* the optionee did not attempt to exercise his option. In the case at bench defendant prevented plaintiff from exercising his option by terminating his employment; because of defendant's action, the initial term of employment never would be completed. (Cf. gen. *Buxbom* v. *Smith,* 23 Cal.2d 535, 541 [145 P.2d 305]; *Navarro* v. *Jeffries,* 181 Cal.App.2d 454, 461 [5 Cal.Rptr. 435].) Directing itself to a similar situation, the court in *Dixie Glass Co.* v. *Pollak, supra* (Tex.Civ.App.) 341 S.W.2d 530, 541, said: "A substantial provision of the contract breached by appellant was the option of appellee to extend it. When the contract was breached time had not arrived

for the exercise of the option. When appellant repudiated the contract, he deprived appellee of this contract right. Too, since appellant had repudiated the contract and discharged appellee, it would be useless for appellee to exercise the option. The law does not require a useless act. We think the fact there were options in the contract in favor of appellee is one element to be considered by the jury in determining damages, that is, the jury could consider the probability of the exercise of the options in determining the length of the term."

The decision in *Schmidt,* although holding the measure of damages prescribed by Civil Code section 3306 does not apply to an action for damages on account of the breach of an option to purchase real property where there never was an election to exercise the option, also held the measure of damages in an action for breach of such an option is that prescribed by Civil Code section 3300, i.e., the amount which will compensate the party aggrieved for all of the detriment proximately caused by the breach. Actually defendant's anticipatory breach of contract was the cause of damage resulting (1) from the loss of employment for the balance of the original term at the rate of compensation agreed upon, and (2) from the loss of employment for the additional two-year term, subject to his option, at the same rate of compensation. The items of damage for breach of an option to purchase real property and the items of damage for breach of an option to renew a contract of employment are essentially different, and the rule stated in *Detroit Graphite Co.* v. *Hoover, supra,* 41 F.2d 490, 494, and *Dixie Glass Co.* v. *Pollak, supra* (Tex.Civ.App.) 341 S.W.2d 530, 541, authorizing the trier of fact to consider the probability the employee would exercise the option in determining the length of the unexpired term of employment when applying the applicable measure of damages, is reasonable. In any event, as to the case at bench, assuming the measure of damages for the loss of the option right is the loss of its value, as such, defendant did not propose a formula to determine this value either by the offer of evidence or a requested instruction. Lacking such a proposal, the instruction given, which permits the jury, in effect, to premise the damage caused by the loss of the option right upon the probable loss of wages plaintiff might have recovered under the contract were he permitted to exercise the option, affords an applicable prima facie measure of damages, and is reasonable. Defendant did not offer any evidence in support of a different measure of damages. Pertinent is the statement of the court in *Detroit Graphite Co.* v. *Hoover, supra,* 41 F.2d 490, 494, that "the jury might find that there was no other way to give effect to plaintiff's right to damages for the whole period covered by the contract and the option."

Defendant also contends the instruction by the court respecting considera-

tion of the two-year additional term subject to plaintiff's option was improper because there was no evidence supporting the conclusion he might or could exercise the option. In support of this position defendant asserts there is no evidence from which the jury could conclude plaintiff would be alive at the end of the original two-year term. The evidence respecting plaintiff's age and health supports the conclusion he would be alive. There was no evidence to the contrary.

Defendant's final contention plaintiff's counsel was guilty of misconduct depriving it of a fair trial is premised, among other things, on counsel's asserted practice of couching his questions to witnesses so as to assume facts not in evidence. In support of this position, defendant cites one example in which counsel asked a witness if he knew an attorney for defendant had a copy of the pending patent application. Counsel assured the court he intended to establish the fact assumed. Defendant contends the assumed fact was not established. However, as heretofore indicated, there was evidence that at one time the attorney for defendant had a copy of the pending patent application in his possession, which he had returned to plaintiff's patent attorney. The misconduct charged is of minuscule importance. The only other instance of similar alleged misconduct cited by defendant is an incompleted question by counsel to which an objection was made and sustained. At the time the objection was sustained the court upbraided counsel for asking questions of this type. The charged misconduct in asking the incompleted question is of no consequence. Defendant does not direct attention to any other questions in which counsel for plaintiff allegedly assumed facts not in evidence.

Defendant also claims counsel for plaintiff was guilty of misconduct because he phrased questions in a manner giving the impression defendant and certain of its personnel harbored a racial bias against plaintiff, a German. There was evidence an official of defendant stated there were too many Germans in the organization. Counsel's purported attempt to show defendant and its officers were prejudiced against people of German nationality was an effort to indicate a motive for termination of plaintiff's employment. No misconduct occurred.

Defendant also contends counsel was guilty of misconduct because during oral argument he stated defendant had a copy of the pending patent application, and for this reason its claim of insubordination in refusing to comply with the request of its officers to deliver them a copy was unfounded. As heretofore noted, at one time the attorney for defendant did have a copy of the pending patent application.

Defendant moved for a new trial. The court considered the foregoing

alleged charges of misconduct by counsel, and rejected any conclusion they were prejudicial to defendant's case. With respect to the alleged misconduct in oral argument the court concluded counsel's statement defendant had a copy of the pending patent application was premised on an inference defendant's attorney, who at one time had possession of such a copy, made another copy for his files. This inference is premised on the fact when defendant's attorney returned plaintiff's copy to plaintiff's patent attorney the former made recommendations respecting purported amendments to the application which led the court to believe he must have retained a copy in which he included these purported amendments.

On hearing the motion for new trial, the court also indicated its approval of the sufficiency of the evidence to support the verdict.

■ Defendant in its "Additional Brief" asserts the following: By the express terms of the employment contract defendant was entitled to terminate the contract in the event of termination of the exclusive licensing agreement between plaintiff and defendant. On June 9, 1968, which followed commencement of the trial of the case at bench but preceded entry of judgment on June 18, 1969, defendant's motion for a new trial on June 27, 1969, and the court's denial of the motion on July 30, 1969, the Supreme Court of the United States changed the existing law to permit a licensee of a patent to contest the validity of the patent of the licensor. (*Lear, Inc.* v. *Adkins,* 395 U.S. 653 [23 L.Ed.2d 610, 89 S.Ct. 1902].) Previously the United States Supreme Court had held a patent licensee was estopped to contest the validity of the license issued his licensor, and this rule was followed by the Supreme Court of California in *Adkins* v. *Lear, Inc.,* 67 Cal.2d 882, 891 [64 Cal.Rptr. 545, 435 P.2d 321]. Counsel for defendant, acting on the previously existing patent-licensee estoppel doctrine believed. any attack upon the validity of the patents issued plaintiff was unavailable as a defense to the action at bench; was not engaged in patent work and the Supreme Court decision changing the patent-licensee estoppel rule did not come to his attention until the autumn of 1969; and, upon learning of the change, caused an investigation to be made respecting the validity of the patents issued plaintiff and concluded they were invalid. Over six months before trial of the case at bench, i.e., on December 19, 1968, defendant had commenced an action to rescind the patent-license agreement with plaintiff. On March 6, 1970, which was nine months after the decision in *Lear, Inc.* v. *Adkins, supra,* 395 U.S. 653 [23 L.Ed.2d 610, 89 S.Ct. 1902], defendant filed a supplement to its complaint in the rescission action alleging the invalidity of the patents which sought rescission and damages. On June 2, 1970, judgment was rendered in the latter action which, among other things, declared the patents were invalid.

Defendant contends it should be permitted to raise the invalidity of plain-

tiff's patents in the action at bench as a ground for justifiable termination of the employment agreement, and the judgment herein should be reversed for this purpose.

█   In reaching a decision on appeal an appellate court is governed by the record; will not consider facts having no support in the record; and will disregard statements of such facts set forth in a brief. (*Gantner* v. *Gantner,* 39 Cal.2d 272, 277-278 [246 P.2d 923]; *Johnston* v. *Callahan,* 146 Cal. 212, 214 [79 P. 870]; *Cox* v. *State of California,* 3 Cal.App.3d 301, 307 [82 Cal.Rptr. 896]; *In re Linda D.,* 3 Cal.App.3d 567, 571 [83 Cal.Rptr. 544]; *Valley Vista Land Co.* v. *Nipomo Water & Sewer Co.,* 266 Cal.App. 2d 331, 337 [72 Cal.Rptr. 181]; *Schecter* v. *County of Los Angeles,* 258 Cal.App.2d 391, 399 [65 Cal.Rptr. 739]; *Dryer* v. *Dryer,* 231 Cal.App.2d 441, 451 [41 Cal.Rptr. 839]; *People* v. *Jackson,* 230 Cal.App.2d 485, 490 [41 Cal.Rptr. 113]; *People* v. *Roberts,* 213 Cal.App.2d 387, 394 [28 Cal. Rptr. 839]; *People* v. *Foster,* 195 Cal.App.2d 651, 654 [15 Cal.Rptr. 891]; *Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669, 679 [9 Cal.Rptr. 90].)   █   The facts heretofore outlined respecting the alleged invalidity of plaintiff's patents are the product solely of appellant's "Additional Brief"[1]; are not supported by any evidence or showing in the record; and may not be considered by this court as a basis for reversal.

Furthermore, the issue of the invalidity of the patents involves mixed questions of law and fact; was not presented to, passed upon or considered by the trial court either by pleading, suggestion, argument or otherwise; as noted, is not supported by any evidence or other showing in the record on appeal; and for these reasons may not be raised for the first time on appeal. (*Estate of Westerman,* 68 Cal.2d 267, 278-279 [66 Cal.Rptr. 29, 437 P.2d 517]; *Caplan* v. *Schroeder,* 56 Cal.2d 515, 520-521 [15 Cal.Rptr. 145, 364 P.2d 321]; *Barrera* v. *De La Torre,* 48 Cal.2d 166, 172 [308 P.2d 724]; *Panopulos* v. *Maderis,* 47 Cal.2d 337, 340 [303 P.2d 738]; *Dryer* v. *Dryer, supra,* 231 Cal.App.2d 441, 451; *Spaziani* v. *Millar,* 215 Cal.App.2d 667, 678 [30 Cal.Rptr. 658]; *Thomson* v. *Casaudoumecq,* 205 Cal.App.2d 549, 553 [23 Cal.Rptr. 189].)

The fact the United States Supreme Court changed the applicable law in the premises after commencement of trial and shortly before rendition of judgment does not authorize this court to reverse the judgment in order to permit defendant to assert the law as changed and apply it to the case at bench by appropriate pleadings and evidence upon the theory the evidence defendant asserts it will produce on a new trial would dictate a judgment in

---

[1]It is improper for an appellant to attempt to bring before the appellate court alleged facts which do not appear in the record on appeal. (*Loving & Evans* v. *Blick,* 33 Cal.2d 603, 613-614 [204 P.2d 23].)

its favor under the new law. As noted, the record before this court does not support the conclusion such evidence exists. Defendant's remedy in the premises, if any, is not available through this court on this appeal.

The judgment is affirmed.

Whelan, J., and Ault, J., concurred.

A petition for a rehearing was denied January 26, 1971, and appellant's petition for a hearing by the Supreme Court was denied March 3, 1971.