[No. E003827. Fourth Dist., Div. Two. Dec. 2, 1987.]

GEORGE MITCHELL et al., Plaintiffs and Appellants, v.
CITY OF INDIO et al., Defendants and Respondents.

## COUNSEL

Richard I. Roemer for Plaintiffs and Appellants.

Best, Best & Krieger, Douglas S. Phillips, Crandall, Whitesell & Ralls and Lynn D. Crandall for Defendants and Respondents.

## OPINION

McDANIEL, J.—In an action against the City of Indio and others to invalidate Annexation No. 54 (see *infra*) and to compel a special election on the issue, plaintiffs[1] have appealed from a summary judgment entered in favor of defendants.

### FACTUAL AND PROCEDURAL BACKGROUND

The area affected by Annexation No. 54 is comprised of 723.32 acres with an estimated population of 410, and is bounded by railroad tracks on the north; Fred Waring Drive on the south; Jefferson Street on the west, and a storm channel on the east. The annexation was requested by Ted Eichelberger, the developer of a proposed convention center in the affected area.

On May 2, 1986, the City of Indio (the City) mailed each registered voter and each landowner in the area of Annexation No. 54 a notice that a public hearing to consider such annexation would be held on May 21, 1986, i.e., *19* days later. On May 7, 1986, i.e., *14* days before the May 21 hearing, the City published a notice of the hearing.[2]

---

[1] The plaintiffs are: George Mitchell; Joan McNeil; Thomas R. McNeil; Micaela L. Alvarez; Judith Ann Starr; Dennis Errol Starr; Wynetia M. Stevson; Fernando M. Gutierrez; R. Gene Wilson; Aril Wilson; and Charline Thompson.

[2] Government Code section 57002 requires that notice of a local government reorganization hearing shall be by "mailing, publication, and posting" and that the date of the hearing "shall not be less than *15* days . . . after the date the notice is given." (Italics added.)

Government Code section 56154 recites: "If the published notice is a notice of a [local government reorganization] hearing, publication of the notice shall be commenced at least *15* days prior to the date specified in the notice for the hearing." (Italics added.)

After the May 21 hearing, the city clerk issued a certificate reciting that there were 187 registered voters in the affected area; that 47 "signatures" (i.e., written protests) were required to trigger an order for an election on the annexation[3] and that 72 "signatures" had been submitted, of which 45 had been verified (i.e., 24.06 percent).

Thereafter, at a special meeting, the city council unanimously adopted a resolution ordering Annexation No. 54 without an election.

About six weeks later, plaintiffs filed a complaint against the City, its council, and all persons interested in the matter of Annexation No. 54. The complaint alleged in relevant part that plaintiffs were landowners and/or registered voters in the annexed area, and that the annexation proceedings had been defective because the City had not given at least 15 days notice of the public hearing thereon, and further because the City had improperly determined the number of registered voters in the affected area. Plaintiffs sought to invalidate the annexation and to compel the City to hold a special election on the issue. The City and its council (the City) and Ted Eichelberger (the developer) each filed an answer to the complaint.

Thereafter, the developer filed a motion for summary judgment and the City joined in the motion. The motion was supported by, among other things: (1) a declaration from the City's assistant director of planning which recited in part that she had directly supervised the May 2, 1986, mailing which related to Annexation No. 54 (*supra*), and (2) a declaration from the city clerk which recited in part that the statement in her certificate, *supra,* that there were 187 registered voters in the affected area had been based upon "the then most recent official voters' register which [she had] requested and obtained from the registrar of voters of Riverside County."

In opposition to the motion, plaintiffs filed: (1) a copy of a minute order overruling the City's demurrer to plaintiffs' complaint; (2) a copy of an order from this court denying the City's petition for writ of mandate in connection with the foregoing order as to its demurrer, and (3) the declaration of George Mitchell, one of the plaintiffs (see fn. 1, *ante*), reciting in relevant part that: (a) he was and had been for many years a landowner in the affected area; (b) he had not received a mailing as to the May 21 hearing; (c) at that hearing he had informed the city council that its published notice of the hearing had been untimely, and (d) he had personal

---

[3] Government Code section 57075 requires the conducting authority, in the case of a registered voter district annexation, to: "(2) Order the change of organization or reorganization subject to confirmation by the registered voters residing within the affected territory if written protests have been filed and not withdrawn by . . . (A) At least *25* percent but less than 50 percent of the registered voters residing in the affected territory." (Italics added.)

knowledge that at least four persons whose names were on the list of registered voters used by the city clerk to determine the number of such voters in the affected area were dead, and that at least twelve persons whose names were on the list do not and did not reside in the affected area. The declaration did not include or refer to any documentation in support of either of the foregoing statements about the voters' list.

After a hearing, the developer's motion for summary judgment was granted and judgment was entered in favor of the developer and the City and against plaintiffs. The court's reasons for granting the motion were stated in a later "ORDER FOR ENTRY OF SUMMARY JUDGMENT," which recited in relevant part:

"As to the voters' list issue, the court believes that as a matter of law, the city clerk's duty is not to verify the correctness of the voters' register but rather is to cause the names of the signers on written protests to be compared with the voters' register and ascertain therefrom the number of registered voters in the affected territory and the number of qualified signers appearing on the written protests. The court is satisfied that the city clerk performed her duties and that no triable issue as to any material fact exists as to this issue. . . .

"With relation to the issue of the notice of hearing, the court believes that no triable issue as to any material fact exists as to this issue. The court has noted that *Government Code* section 56107[4] provides for the annexation statutes to be liberally construed in order to effect their purposes. The code provision commands that defects in procedures should be ignored if they do not substantially affect rights. . . . The court believes that the one day defect in the statutory notice was minor and technical, because the published notice procedure was only one of several forms of notice under *Government Code* section 57025,[5] because one of the other forms of notice involved a mailing to each property owner and registered voter owning property or residing in the affected territory, because this notice was mailed

---

[4]Government Code section 56107 recites in relevant part: "This division shall be liberally construed to effectuate its purposes. *No change of organization or reorganization ordered under this division and no resolution [thereunder] shall be invalidated because of any defect, error, irregularity, or omission in any act, determination or procedure which does not adversely and substantially affect the rights of any person* [or public entity]. All determinations made by a commission under, and pursuant to, this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the court finds that any determination of a commission or a legislative body was not supported by substantial evidence in the light of the whole record." (Italics added.)

[5]Government Code section 57025 recites that notice of a reorganization hearing shall be given by publication, by posting, and by mailing to all landowners within the affected territory.

19 days prior to the hearing, because mailed notice is a better form of notice than is a legal notice published in a newspaper and because the published notice was short by only one day. The court believes that the purpose of the statute is to give opponents of the proposed annexation an opportunity to organize and mount an opposition. The court believes that these purposes were not thwarted by the one day insufficiency in the statutory period of published notice. . . .

"The court is aware [of the reference to notice requirements in] *Government Code* section 56106[6] . . . However, the court does not believe that section 56106 is dispositive of the issue for the following reasons:

"A. In determining whether a defect in a mandatory procedural statute should invalidate municipal action, the court should weigh the value of the defect against the purposes sought to be achieved by the statutory procedure. . . .

"B. The court believes that particularly in situations in which the purpose of the statutory procedure has been achieved, the doctrine of substantial compliance should apply and the court believes that there was substantial compliance with the statutory procedures with relation to the challenged annexation. . . .

"C. The court believes that no harm was done as a result of the one day insufficiency in the period of notice by publication. This is so because there were other and in fact better forms of notice and because *no proof was made nor evidence offered by plaintiffs that one day would have made any difference in the outcome of the matter.*" (Italics added.)

This appeal followed.

## DISCUSSION

Plaintiffs contend: (1) the City's failure to comply with the 15-day publication requirement should have invalidated the annexation, and (2) the list of registered voters used by the city clerk to determine if an election was required was invalid.

---

[6]Government Code section 56106 recites: "Any provisions in this division governing the time within which an official, a conducting authority, or the commission is to act shall in all instances, *except for notice requirements,* be deemed directory, rather than mandatory." (Italics added.)

I

NOTICE

█ Relying on Government Code section 56106 (see fn. 6, *ante*), plaintiffs contend that the 15-day notice requirement for public hearings on annexation is clearly mandatory, and that therefore the City's failure to comply therewith should have invalidated the annexation. Not so. Although the reference to notice requirements in section 56106 may indicate that such requirements are mandatory, the *absence* of any such reference in the statute immediately following section 56106, namely section 56107 (see fn. 4, *ante*) indicates that a failure to comply with notice requirements will not necessarily invalidate a reorganization.

More specifically, section 56106 recites that "Any [time provisions] *except for notice requirements*" (emphasis added) shall be "directory rather than mandatory." Section 56107, on the other hand, contains no such exception, but recites that "No . . .reorganization . . . shall be invalidated because of *any* defect, error, irregularity, or omission in *any* act, determination *or procedure* which does not adversely and substantially affect the rights of any person . . . ." (Italics added.) If the Legislature had intended to except cases with notice defects from section 56107's prejudice requirement, it presumably would have said so by including "except for notice requirements" in the statute, e.g. "in any act, determination or procedure [except for notice requirements] which does not adversely and substantially affect. . . ."

█ " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' " (*City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318].) █ So it is here. The inclusion of the notice provision in section 56106 and its omission in section 56107 shows that the Legislature intended to except notice requirements from the general rule of section 56106 (time provisions are directory), but did not intend to except notice requirements from the general rule of section 56107 (harmless irregularities will not invalidate reorganization).

Plaintiffs are confusing the City's mandatory *duty* to observe the 15-day notice requirement, with the alleged mandatory *effect* on the annexation of the City's failure to comply with such a requirement. █ As Justice Tobriner explained in *Morris* v. *County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606], in the former context ."the term 'mandatory' refers to an obligatory duty which a governmental entity is required to

perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the 'directory' or 'mandatory' [effect] designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. [Citations.][4]" [Footnote 4 of the quoted passage provides:] *"Many statutory provisions which are 'mandatory' in the obligatory sense are accorded only 'directory' effect.* For example, while a governmental entity has an obligatory duty to observe the provisions of California's 'open meeting' law (Gov. Code, § 54950 et seq.), and can be enjoined from violating or mandated to follow such provisions (Gov. Code, § 54960), California decisions to date have uniformly construed such provisions as having 'directory' effect, and thus have refused to invalidate governmental acts, such as the promulgation of an administrative regulation, even when the governmental entity improperly discussed the matter at a nonpublic meeting. [Citations.]" (*Id.,* at pp. 908-909, italics added.)

■ Similarly, and even more relevant to the facts in the case here, in election cases "[t]he general rule is that *after* an election has been held statutory requirements as to the time and manner of giving notice are *directory,* unless it appears that the variation has prevented the electors from giving a full and free expression of their will, or unless the statute itself contains a further provision to the effect that such a variation will render the election void." (*People* v. *City of Carlsbad* (1954) 128 Cal.App.2d 77, 83-84 [274 P.2d 740], italics added.)

Although the case here is not an election case, because the rights of the plaintiffs here are similar to those of plaintiffs in such a case (the plaintiffs in *Carlsbad* had brought an action to test the validity of the incorporation of the city), we believe the foregoing rule as to the effect of the failure to comply with statutory notice requirements is equally applicable to the City's failure to comply with the notice requirement in the case here.

■ When we apply the rule in *Carlsbad* to the case here, we find no evidence that the one-day variation in the published notice prevented any voters or landowners in the affected area from giving a full and free expression of their will. Moreover, the only statutory provision which would render the reorganization void was the substantial prejudice provision of section 56107, and, as the trial court stated in its order, *supra,* plaintiffs offered "no evidence . . . that one day would have made any difference in the outcome of the matter."

On appeal, plaintiffs argue that plaintiff George Mitchell had made an offer of proof as to prejudice at the summary judgment hearing, but that the

court had refused to hear it. However, there is no transcript of that hearing in the record, nor is there any reference in the record to any such offer of proof. ■ "In reaching a decision on appeal an appellate court is governed by the record; will not consider facts having no support in the record; and will disregard statements of such facts set forth in a brief." (*Oldenkott* v. *American Electric, Inc.* (1971) 14 Cal.App.3d 198, 207 [92 Cal.Rptr. 127]; *Gantner* v. *Gantner* (1952) 39 Cal.2d 272, 277-278 [246 P.2d 923].) Accordingly, we cannot consider the unsupported factual allegations as to prejudice in plaintiffs' brief, and are governed by the absence of any such allegations in Mitchell's declaration, and by the court's statement after the hearing that no such evidence had been offered.

■ In view of all the above, and because plaintiffs have not cited any authority to the contrary, we hold that the one-day variation in the publication of notice of the May 21 meeting did not require the invalidation of the annexation.

## II

### THE LIST OF VOTERS

■ Plaintiffs contend that the list of voters used by the City to determine if an election was required was invalid because of the "evidence" in George Mitchell's declaration that at least four persons whose names were on the list were dead, and at least twelve persons whose names were on the list did not reside in the affected area. However, Mitchell's declaration contained no such "evidence."

More specifically, the relevant statements in Mitchell's declaration recited in their entirety: "I know of my own personal knowledge that at least four persons living in the affected area, who were listed as registered voters on the list used by the City Clerk to determine the validity of the petitions that I filed with the City, are dead, to wit:

| "Name | Date of Death |
|---|---|
| Lottie Mae Caddo | June 2, 1984 |
| Edward Kimble | May 17, 1986 |
| Andrew Alvin Caddo | March 20, 1984 |
| Dit Grey | November 15, 1985 |

"I also know of my own personal knowledge that at least 12 persons from just one place in the annexed area, the Elms Mobile Home Park, do not and

did not reside in the affected area but are listed on the list of registered voters.

"The above facts are within my personal knowledge and if called to testify in the within matter I could truthfully and competently testify thereto."

The foregoing statements do not set forth "admissible evidence, [or] show affirmatively that the affiant is competent to testify to the matters stated therein." (Code Civ. Proc., § 437c, subd. (d).) In *Canales* v. *City of Alviso* (1970) 3 Cal.3d 118 [89 Cal.Rptr. 601, 474 P.2d 417], a contested election case which plaintiffs rely on, 10 of the people who had voted were shown *by their testimony* to be disqualified by nonresidence, and an 11th was *stipulated* to be disqualified by a felony conviction. No such evidence was offered here. ■ Moreover, even if plaintiffs had introduced evidence that certain names should not have been on the voters' list, as the court stated in its judgment, *supra*, the City had no duty to verify the accuracy of the list.

More specifically, Government Code section 57052 recites: "Upon conclusion of the hearing, the conducting authority shall determine the value of written protests filed and not withdrawn. The value of written protests shall be determined in the same manner prescribed in Sections 56707, 56708, and 56710 for determining the sufficiency of petitions filed with the commission."

Section 56707 (sections 56708 and 56710 are concerned with landowners, rather than voters) recites: "If a petition is signed by registered voters, the executive officer shall cause the names of the signers on the petition to be compared with the voters' register in the office of the county clerk or registrar of voters and ascertain both of the following:

"(a) The number of registered voters in the affected territory.

"(b) The number of qualified signers appearing on the petition."

In sum, the City's *only* duties as to the voters' list, are to obtain the voters' register in the office of the county clerk or registrar of voters, and to ascertain, *from that register,* the number of registered voters in the affected territory. As noted, the city clerk's declaration in support of the developer's motion for summary judgment recited that she had based her statement as to the number of registered voters in the affected area on the registrar of voters' most recent voters' register.

Plaintiffs have cited no authority for their argument that the city clerk had a duty to verify the accuracy of the voters' register, nor, as noted, have

plaintiffs made the threshold showing that the register which the clerk used was invalid. Accordingly, plaintiffs' contention that the City's determination that it was not required to hold an election was based on an invalid voters' list is without merit.

Based upon the foregoing analysis under the several points to be discussed, we hold that the trial court properly granted the motion for summary judgment.

DISPOSITION

The judgment is affirmed.

Campbell, P. J., and Dabney, J., concurred.