[No. A038255. First Dist., Div. Four. July 29, 1988.]

In re the Marriage of DELOIS G. and MAURICE N. HIGINBOTHAM.
DELOIS G. HIGINBOTHAM, Appellant, v.
MAURICE N. HIGINBOTHAM, Appellant.

COUNSEL

Leo M. Cook for Appellant Wife.

Lawrence C. Buchanan for Appellant Husband.

OPINION

POCHÉ, J.—

## I. INTRODUCTION

Maurice Higinbotham (Maurice) and Delois Higinbotham (Delois) appeal and cross-appeal, respectively, from a judgment disposing of their property upon dissolution of their marriage. Maurice contends that the court erred in (1) treating partly as community property a house he bought before marriage; (2) failing to treat as his separate property the increased value of his disability retirement benefits resulting from their tax exempt status; and (3) requiring him to pay a portion of Delois's attorneys fees. Delois contests these points and asserts in her cross-appeal that (1) she was entitled to a greater share of her attorneys fees; and (2) the judgment should include an order directing Maurice's retirement plan to pay her an appropriate share of any death or survivor's benefits payable under the plan.

We reverse as to the treatment of the retirement benefits, and otherwise affirm the judgment.

## II. THE CHURCH STREET HOUSE

### A. *Factual Background*

In 1965 Maurice bought a house on West Church Street in Ukiah (the Church Street house) by trading a mobilehome and assuming an outstanding loan. He lived in the house until 1967, when the parties were married. After the marriage the parties lived elsewhere, and the Church Street house was rented out.

There was no evidence of a separate property source from which payments on the Church Street property might be made, other than rent from the property itself. Rent was paid in different forms at different times—as checks payable to Maurice, checks payable to Delois, or cash. Each spouse maintained a separate checking account, and the rent might be deposited in either account, or might be applied to current expenses; Delois testified

there was "no rhyme or reason to it." Likewise their earnings were heavily intermingled between the two accounts, and bills were paid out of both accounts, or either of them, with no apparent regard to the separate or community character of the obligation.

Delois was generally in charge of managing the money because, as she testified, Maurice "didn't want records kept; he didn't want to be bothered with it." One night Delois came home from a real estate class and told Maurice that because of the commingling of community funds, she had a "vested interest" in the Church Street house. Thereafter she referred to the Church Street property as "our house." Maurice apparently did nothing to dissuade her from this idea or to stop the commingling of funds.

About three months before the parties separated, Maurice threw away boxes of cancelled checks and other records. Just before the separation, he deeded the Church Street house to his daughter, Alice Higinbotham. She was subsequently joined in this action and participated in the trial. She has not appealed from the judgment.

The trial court concluded that the community was entitled to a pro tanto interest in the Church Street house based on all payments during marriage reducing the principal on the loan. Maurice asserts that this was error.

B.   *Traceability*

■   The community acquired an interest in the Church Street house to the extent community funds were used to make payments on the property. (*In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372 [168 Cal.Rptr. 662, 618 P.2d 208].) The trial court found in effect that all payments during the marriage were made with funds which were presumptively community because of the commingling of community and separate income and the impossibility of tracing house payments to a separate property source.

■   "Where funds are paid from a commingled account, the presumption is that the funds are community funds. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 610-611 [122 Cal.Rptr. 79, 536 P.2d 479]; *In re Marriage of Marsden* [(1982) 130 Cal.App.3d 426, 441 (181 Cal.Rptr. 910)].) In order to overcome this presumption, a party must trace the funds expended to a separate property source. (*Ibid.*) This issue presents a question of fact for the trial court and its finding will be upheld if supported by substantial evidence." *(In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1010 [226 Cal.Rptr. 766].) When the trial court has found the funds to be community, the question on appeal is whether substantial evidence supports that finding. Maurice fails to address the issue in these terms, perhaps because of the daunting burden placed on one who challenges the sufficiency of the

evidence to support a trial court finding. (See *Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 587-588 [225 Cal.Rptr. 717].)

■ The evidence does not compel the conclusion that, as a matter of law, the payments on the Church Street house were traceable to Maurice's separate property (i.e., the rent from the house). ■ "There are essentially two methods for tracing expended funds to a separate property source. The first . . . is direct tracing. When separate funds deposited with community funds continue to be on deposit when the withdrawal is made and it is the intention of the drawer to withdraw separate funds specifically, the separate property status of the withdrawn funds is established." (*In re Marriage of Frick, supra,* 181 Cal.App.3d 997, 1010-1011.) In the context of periodic house payments claimed to be made with separate property, the evident effect of this language is that *each payment* must have been made when separate property funds were present in the account on which the payment was drawn, and must have been accompanied by an intent on the part of the drawer to utilize those funds rather than any community funds.

■ No such showing was made or attempted here, and Maurice tacitly concedes that he cannot directly trace individual payments to a separate property source. He therefore relies on the "recapitulation" method described in *See* v. *See* (1966) 64 Cal.2d 778, 783 [51 Cal.Rptr. 888, 415 P.2d 776], under which payments may be traced to a separate property source based upon a showing that the community income throughout the marriage was exhausted by family expenses, such that any sums devoted to separate property were necessarily separate in origin. (*Ibid.*) However, the records available at trial were apparently inadequate to establish the actual amounts of community income and expenses over the course of the marriage. Certainly the record contains no attempt at an actual recapitulation of expenses or income. Maurice attempts to overcome this hurdle by citing testimony in which Delois said that she paid bills from the two accounts and then "whatever was left" would be "used for groceries, family expenses, whatever, for the rest of the month." This testimony was at most ambiguous, and the trial court was not obliged to conclude that all of the income of both parties was used for living expenses. Testimony of similar weight tended to rebut any inference of traceability by establishing that some of the rental income from the Church Street property was directly applied to family expenses, and that there were some months when there was no rental income, so that the house payments in those months necessarily came out of community funds.

Maurice argues that a sufficient basis for recapitulation is afforded by tax returns showing that the annual income for the Church Street property exceeded annual expenses, excluding depreciation. This evidence indicates only that separate income was *available* to meet the payments; it does not

show the income was actually so applied. ■ "Evidence which merely establishes the availability of separate funds on particular dates without also showing any disposition of the funds is not sufficient proof of tracing to overcome the presumption in favor of community property." (*Estate of Murphy* (1976) 15 Cal.3d 907, 918 [126 Cal.Rptr. 820, 544 P.2d 956], quoted in *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 442 [181 Cal.Rptr. 910].)

■ Furthermore, the recapitulation method may be employed only when, through no fault of the spouse asserting a separate property interest, it is impossible to ascertain the balance of income and expenditures at the time the property was acquired. (*See* v. *See, supra,* 64 Cal.2d 778, 783.) ■ The evidence here warranted a finding that Maurice was not free of fault. He eschewed any involvement in recordkeeping because, as Delois put it, "he didn't want to be bothered with it." His own testimony indicates that this neglect persisted even after Delois told him that expenditures of commingled funds on the Church Street property gave the community an interest in the house. Thereafter, according to Maurice, Delois referred to the Church Street property as "our place." Although he said at trial that he disagreed with this characterization, there is no evidence that he ever expressed his disagreement. His attempt to transfer the property to his daughter on the eve of separation supports an inference that he was fully aware of the community's claims and had simply neglected to take any action to protect against them.

■ A party who commingles his or her separate property with property of the community assumes the burden of keeping adequate records. (*In re Marriage of Frick, supra,* 181 Cal.App.3d 997, 1011.) ■ Even though Maurice may not have actively commingled property, he suffered Delois to do so with full knowledge of the facts. He not only failed to keep records, but disdained any effort to keep them and discarded many of them a few months before separation. The trial court did not abuse its discretion in finding that Maurice had not carried his burden of tracing the payments to his separate property.

## C. *Estoppel*

■ Maurice contends that Delois is estopped to assert a community interest in the Church Street house because she "voluntarily assumed the management and payment of joint living expenses and the collection of rent and payment of the Church Street obligation." According to Maurice, this undertaking of management responsibilities placed Delois under a fiduciary duty with respect to the Church Street property.[1]

---

[1] Counsel for Delois clouds the issue, instead of meeting it, by discussing the question whether Delois was responsible for managing the property itself—finding tenants, undertak-

We see no basis for holding that the elements of an estoppel were shown as a matter of law. ■ "For there to be estoppel by conduct all of the following elements must be present: (1) a representation or concealment of material facts; (2) made with knowledge, actual or virtual, of the facts; (3) to a party ignorant, actually and permissibly, of the truth; (4) with the intention, actual or virtual, that the latter act upon it; and (5) the party must have been induced to act upon it." (*In re Marriage of Halpern* (1982) 133 Cal.App.3d 297, 314 [184 Cal.Rptr. 740].) ■ None of these elements is present here except Delois's knowledge of the facts—which, according to Maurice's own testimony, she explicitly shared with him. His inaction in the face of that knowledge was insufficient under general equitable principles to estop Delois from asserting her rights.

Nor do the cases cited by Maurice indicate that a managing spouse is estopped to assert rights based on the payment of commingled funds toward the nonmanager's separate property. *Fields* v. *Michael* (1949) 91 Cal.App.2d 443 [205 P.2d 402], is concerned with remedies for unauthorized gifts of community property to third persons. *Title Insurance etc. Co.* v. *Ingersoll* (1908) 153 Cal. 1, 5 [94 P. 94], merely observes that the wife's acquiescence in the husband's management of her separate property does not show any intent by her to make a gift of it. (See also *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 255 [105 Cal.Rptr. 483] [same, where wife manages husband's property].) *In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905-906 [191 Cal.Rptr. 629, 663 P.2d 187], deals with the managing spouse's duty to disclose the existence of a community asset.

In *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 563 [63 Cal.Rptr. 13, 432 P.2d 709], the court said that the right of control over community property, then conferred by statute on the husband alone, made the husband analogous to a partner and barred him from taking unfair advantage of that position. Citing this case, Maurice contends somewhat obliquely that Delois was under a fiduciary duty with respect to property management, and should be estopped by her supposed violation of that duty. However, the partnership analogy drawn in *Weinberg* was based on the husband's statutory management powers over community property—powers which are now vested in both spouses jointly. (See Civ. Code, § 5125.) More significantly, *Weinberg* was concerned with the misuse of *community* funds in a way which injured the nonmanaging spouse. Here it does not appear that Maurice was injured by the mismanagement of any *community* funds. Rather his supposed injury flows from the presumptive failure to apply his separate income to his separate expenses. That injury occurred largely because Mau-

---

ing maintenance and repairs, and so on. That question is at most only indirectly related to the point urged by Maurice. There is no question that Delois generally managed the family's income and expenses, including those connected with the Church Street property.

rice refused to be involved in his own financial affairs. There is no evidence of a deliberate fraud by Delois. Moreover, Maurice might still have a remedy had he not destroyed records which might have permitted tracing. No estoppel against Delois arises, at least not as a matter of law.

### III. RETIREMENT BENEFITS

Shortly after the parties separated, Maurice was awarded a disability pension based on his employment as a California Highway Patrol officer. At the time of the award he was also qualified for a pension based solely on longevity. Had he elected to receive the longevity pension the benefit level would have been the same, but the payments would have been subject to income tax whereas the disability payments were not.

■ The trial court awarded Delois a share of Maurice's retirement benefits based on a ratio of years of service accrued during the marriage to total years of service. Maurice contends that the court should have set aside as his separate property the tax savings which resulted from the benefits' status as a disability pension. Specifically, he argues that he was eligible for either a longevity or a disability pension; that both paid a gross monthly benefit of $1,921.79; that had he taken the longevity pension, $402.10 would have been deducted for federal and state taxes; that the disability pension was tax exempt; and that the value of the exemption—the amount of tax which would otherwise have been paid—is his separate property.

■ If a spouse elects to receive a disability pension when he or she is qualified for a retirement benefit based on longevity of service, the pension is a community asset except for (1) that portion which is attributable to service before marriage, and (2) that portion which, by virtue of its disability status, exceeds the amount of the longevity benefit. (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 788 [148 Cal.Rptr. 9, 582 P.2d 96].) ■ Maurice contends that the tax savings resulting from the tax-exempt nature of his disability pension fits the second category. We agree.

In *Stenquist, supra,* the court approved formulas defining as separate property "the *net amount . . . received* over and above what would have been *received* as retirement benefits" (quoting *In re Marriage of Mueller* (1977) 70 Cal.App.3d 66, 71 [137 Cal.Rptr. 129]), and "the excess of the husband's pension over the 'retirement' pension that he would have *received* if not disabled." (21 Cal.3d at p. 788, italics added.) Here it is undisputed that because of the tax exemption for disability pensions, Maurice will *receive* a larger benefit than he would have received under a longevity pension. Under the language of *Stenquist,* this amount appears to constitute a true disability benefit and thus Maurice's separate property.

Delois contends that since the gross benefit levels for the two retirement options were identical, there was no "excess" of the disability benefit over the longevity benefit. As noted, however, the emphasis is on the *net amount received,* not the gross amount paid by the plan provider. Indeed the facts in *Mueller, supra,* 70 Cal.App.3d 66, appear fully apposite. There the husband had a choice between a longevity package paying him 65 percent of his final salary, and a hybrid package paying 35 percent of salary as a (taxable) longevity benefit, and 30 percent as a (tax-exempt) disability benefit. In other words, the packages had identical gross benefit levels, but under the disability package some 46 percent of each payment was nontaxable. Not surprisingly, the husband chose this package. The trial court held that the entire disability benefit, or 46 percent of the total, was the husband's separate property. The wife contended that the entire payment was community property. The Court of Appeal rejected both of these positions and remanded the case with directions to "determine the *net amount after taxes by which the disability payments exceed the net amount after taxes that would have been received by virtue of retirement [i.e., longevity] payments.*" (70 Cal.App.3d at p. 72.) The effect of this direction was to treat as separate property the value of the tax exemption.

Delois contends that this portion of *Mueller* is inconsistent with *Stenquist.* In *Stenquist* the husband's disability pension paid 75 percent of his basic pay while a longevity pension would have paid only 65 percent. The husband contended that the entire pension was his separate property because it was attributable to disability. The Supreme Court approved the trial court's assignment as separate property of "the excess of the husband's pension over the 'retirement' pension that he would have received if not disabled." (*Stenquist, supra,* 21 Cal.3d at p. 788.) The opinion does not disclose whether or how the tax ramifications were factored into this calculation. The case supports no particular treatment of tax benefits, because no such issue was considered by the court. ▮▮ "[A]n opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689], quoted in 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, pp. 753, 755.) If anything, the court's unreserved approval of *Mueller* strengthens that case as precedent. (21 Cal.3d at pp. 788-789.)

▮▮ Delois also cites *In re Marriage of Justice* (1984) 157 Cal.App.3d 82 [204 Cal.Rptr. 6], in which it is apparent that the court did *not* reduce the community's share by any tax benefit attributable to disability. Again, however, it does not appear that the question was ever placed before the trial or appellate court. In contrast, the *Mueller* decision must be understood to hold that tax benefits attributable to disability are the separate property of the disabled spouse. Otherwise the direction to the trial court in that case is uncomprehensible.

We discern no coherent policy basis for refusing to follow *Mueller*. It is not suggested, for example, that recognition of the tax benefit as a separate asset will generate serious administrative problems for the trial court or the pension plan administrators. We cannot accept Delois's assertion that such recognition effects the kind of unilateral "transmutation" of community property which was condemned in *Stenquist, supra,* 21 Cal.3d at page 786. The community's interest is exactly what it would have been had Maurice elected a longevity pension. His election did not "transmute" anything which would otherwise have gone to the community; rather it recaptured income which would otherwise go to the taxing authorities.

The judgment must be reversed insofar as it fails to treat as separate property the amount by which Maurice's net after-tax retirement payments exceed the net payments he would have received had he chosen a pension based on longevity alone.

## IV.  SURVIVOR BENEFIT

Delois asserts in her cross-appeal that she was entitled to an order directing Maurice's retirement plan to pay her a suitable share of any survivor or death benefits which become payable during her lifetime. Such an order is authorized by Civil Code section 4800.8, but Maurice contends that Delois has not preserved the point for appeal. He points out that she never requested such an order from the trial court and never objected to its failure in its proposed judgment to provide for such an order.

It is of course generally true that an appellate court will not entertain a point which could have been but was not raised in the trial court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.) This rule loses most or all of its force, however, where the new point is one which could not have been raised in the court below. For example, a point which arises from a change in the law pending appeal may be entertained. (See *id.,* § 254, p. 260.) However it is said that this exception is unavailable if the change in law occurred before rendition of the trial court's judgment. (*Ibid.,* citing *Oldenkott* v. *American Electric, Inc.* (1971) 14 Cal.App.3d 198, 207-208 [92 Cal.Rptr. 127].)[2]

Here it appears that Civil Code section 4800.8 was enacted in 1986 and became effective on January 1, 1987. (Stats. 1986, ch. 686, § 1, pp. 505, 506; Gov. Code, § 9600.) Although judgment was not actually entered in this case until January 26, 1987, it is evident that most of the issues had been decided long before January 1. The case was initially

---

[2]*Oldencott* does not hold that the change in law must precede formal rendition of judgment in order to be invoked on appeal. The opinion appears to rest on the fact that the defense belatedly offered there was without record support. (See 14 Cal.App.3d at p. 208.)

submitted on June 13, 1986. The court vacated the submission in September, directing the parties to undertake further briefing and argument on the status of the Church Street house. On November 10 the court rendered its intended decision. Delois requested a statement of decision, and a proposed statement was apparently promulgated in late November or early December. Both parties then filed papers on Maurice's objections to the proposed statement of decision and on the issue of attorney fees. Judgment was entered, filed, and mailed on January 26, 1987.

We do not believe the delay in formal entry of judgment justifies depriving Delois of her rights under section 4800.8. Her entitlement to an order under that statute "involves only a question of law determinable from a factual situation already present in the record." (*Fields* v. *Blue Shield of California* (1985) 163 Cal.App.3d 570, 585 [209 Cal.Rptr. 781].) The point is not one which "contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial . . . ." (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738].) Rather it flows almost automatically from the fact that Maurice's pension is, in part, a community asset. Section 4800.8 directs that the trial court in such instances "shall make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits . . . ." Maurice offers no substantive objection to such an order. The case is being remanded in any event in connection with the erroneous treatment of Maurice's tax exemption; therefore consideration of the point introduces no significant judicial inefficiency. Accordingly we will direct the trial court on remand to fashion an appropriate order pursuant to section 4800.8.

## V. Attorney Fees

Maurice contends that the trial court abused its discretion by directing him to pay a portion of Delois's attorney fees. He asserts that the trial court misunderstood the parties' relative ability to pay, miscalculating their respective incomes and failing to consider Delois's separate property. In her cross-appeal Delois asserts that the court abused its discretion by not awarding a larger amount.

We reject both positions. In dealing with attorney fees the trial court exercises a broad discretion, and its ruling cannot be disturbed without a clear showing that its discretion has been abused. (*In re Marriage of Frick, supra,* 181 Cal.App.3d 997, 1022.) No such showing is made here. The court did not misunderstand the effect of the judgment on the parties' income; the statements challenged by Maurice were in the past tense, and apparently referred to the parties' respective incomes before any adjustment

which would result from the judgment. The court said that it "gave consideration to Husband's financial ability to pay both before and after entry of judgment." Nor does the record show that the court refused to take either party's separate property into account. There is no indication that the issue was ever specified as one on which either party was seeking an explanation of the court's reasoning; therefore we presume on appeal that the trial court handled it properly. (See Code Civ. Proc., §§ 632, 634.)

## VI. CLERICAL ERROR

Both parties assert that the judgment contains a clerical error in that the court attached the wrong exhibit. Both parties are willing to stipulate to its correction. ■■■ The trial court has the inherent power to correct such an error at any time. (7 Witkin, *op. cit. supra,* Judgment, § 68, pp. 502-503.) Whether to exercise that power is a question for the trial court in the first instance.

## VII. DISPOSITION

The judgment is reversed with respect to the treatment of Maurice's disability pension and the court is directed to (1) award to Maurice that portion of the monthly payments which exceeds the amount payable under a longevity pension, and (2) fashion an appropriate order under Civil Code section 4800.8. The court may also make any dispositional adjustments found to be warranted by these changes. In all other respects the judgment is affirmed, subject to the trial court's power to correct any clerical error.

Each party will bear his or her own costs on appeal.

Anderson, P. J., and Channell, J., concurred.