63 Cal.App.4th 837 (1998)
In re the Marriage of CATHERINE DEE and ALAN WALTER STOLL.
CATHERINE DEE STOLL, Respondent,
v.
ALAN WALTER STOLL, Appellant.
Docket No. G018998.
Court of Appeals of California, Fourth District, Division Three.
May 1, 1998.
*838 COUNSEL
Steven D. Schatz for Appellant.
Jeffrey W. Doeringer for Respondent.
OPINION
SILLS, P.J.
The trial judge refused to allow the husband in a dissolution proceeding to render an opinion as to the value of his separate property house at the time he acquired it. The house later became community property. Because the trial judge refused the husband's proffered testimony, he consequently ruled that the husband had failed to trace any separate interest in the property. The result is a judgment of dissolution which confers a windfall on the wife by determining that the house was 100 percent community property.
We reverse. The trial judge simply failed to apprehend the distinction between tracing a separate interest to its source  to which case law has traditionally appended a recordkeeping requirement  with an owner's right to render an opinion as to the value of his or her own property  for which *839 there are no per se documentary requirements. Because the concerns which animate the recordkeeping requirements of tracing contributions to a separate property source do not logically apply where there is no dispute about the source, the trial court erred.

FACTS
Alan originally acquired the family residence on Laurinda Lane in 1968 when he was married to his first wife, Jill. During the dissolution of that marriage in 1979, Jill received the property and Alan received a note on the property secured by a deed of trust. Later, in June 1983, Jill defaulted on the Laurinda note, and Alan acquired possession of the property through a foreclosure. Alan refinanced the property in August 1983 for $106,500. Concurrent with this refinancing, Alan's second wife, respondent Catherine, executed a quitclaim deed on the property.
Fourteen months passed before Catherine and Alan moved into the residence on Laurinda. Throughout that period the $1,034 monthly mortgage payments came from the wages and earnings of the parties.
In November 1986, while refinancing the Laurinda property to obtain a lower fixed-rate interest, Alan, who had sole title to the house, deeded the property to himself and Catherine as husband and wife as joint tenants. At that time, the outstanding balance due on the trust deed was $105,000. However, in order to qualify for the new interest rate, the bank required a pay-down to $90,000, which Alan financed by a sale of $20,000 worth of Scott Paper stock given to him by his mother. It is uncontroverted that after the 1986 refinancing the parties considered the Laurinda residence as community property.
At trial in August 1995, Alan's attorney tried to elicit from him opinion testimony as to the value of his separate property share of the Laurinda property when he reacquired it as his separate property in 1983. He was singularly unsuccessful in light of the trial court's intervention:
"Q. Mr. Stoll, in June of 1983 do you have an opinion as to the value of the residence at 487 Laurinda in Orange?
"A. Yes. It was 
"Q. And what was that opinion?
"Ms. Wilson: Objection, foundation.
*840 "The Court: Sustained.
"Mr. Klein: Your Honor, he has a right to value his own property.
"The Court: Does he?"
After admonishing counsel of the need to establish that Alan was an owner of the Laurinda property, the court inquired whether Alan's opinion was based on anything other than being the property owner. Alan stated his opinion was based on such things as a bank appraisal and checking "the value of other houses in the area." After nine sustained objections for foundation, and various other objections on the grounds of hearsay and vagueness, counsel again tried to get Alan's testimony on the record as to his opinion of the 1983 value of his property.
"Q. Did you have an independent opinion of your own as to the value of the house at that time?
"A. Yes.
"The Court: Upon what did you base that opinion?
"A. On the realtor's suggestion of what Kay and I should put the house on the market for.
"The Court: We basically have established he has no independent knowledge of his own. If you'd like to speed through this ... I'll decide what weight to give it if any."
In a final attempt to show the basis for his opinion as to the value of the Laurinda property, Alan produced, and unsuccessfully attempted to enter into evidence, a copy of Great Western Saving's closing statement on the 1983 refinance of the property. Ultimately, the trial court ruled that Alan had "failed to meet his burden of tracing" and concluded that all of the Laurinda property was community. Alan then pursued this appeal.

DISCUSSION
Family Code section 2640 provides in pertinent part: "In the division of the community estate ... unless a party has made a written waiver of the right to reimbursement ... the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source." (Italics added.) The present case thus revolves around the meaning of that little word, "trace," in the *841 context of a spouse seeking reimbursement for the value of separate real property which was later transmuted into community property.
It is hornbook California family law that tracing is done either directly, or by a process of elimination whereby a spouse shows the exhaustion of available community funds at the time of acquisition. (E.g., In re Marriage of Braud (1996) 45 Cal. App.4th 797, 823 [53 Cal. Rptr.2d 179].) Direct tracing to a separate source, however, has traditionally been subject to a requirement that it be done by specific records. Mere oral testimony of intent has been held to be inadequate to do the job in light of the general presumption that property acquired during a marriage is community. (E.g., Estate of Murphy (1976) 15 Cal.3d 907, 919 [126 Cal. Rptr. 820, 544 P.2d 956]; In re Marriage of Frick (1986) 181 Cal. App.3d 997, 1011 [226 Cal. Rptr. 766]; see generally, Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1997) ¶ 8:528, rev. #1, 1998, p. 8-134.)
The granddaddy of the specific-record requirement was our Supreme Court's decision in See v. See (1966) 64 Cal.2d 778 [51 Cal. Rptr. 888, 415 P.2d 776]. The relevant text concerning recordkeeping and tracing appears at pages 783 and 784 of the opinion. The context of the discussion is the commingling of funds in a bank account and a rich husband's attempt to trace his separate property in that account. (See 64 Cal.2d at p. 783.) The court explained, in light of the general community property presumption, that a spouse cannot "invoke the burden of record keeping as a justification for a recapitulation of income and expenses at the termination of the marriage that disregards any acquisitions that may have been made during the marriage with community funds." (Id. at p. 784, italics added.) Hence the court concluded that, once the husband "commingles, he assumes the burden of keeping records adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property." (Ibid.)
(1) There are three reasons we must part company with the trial judge as to the need for strict recordkeeping to establish the value of a separate property home for which a spouse seeks reimbursement under Family Code section 2640.
First, the rationale for strict recordkeeping as explained in See plainly does not apply to a case where the asset is real property which was *842 transmuted from separate to community.[1] In such a situation, there is no danger, unlike the case of a commingled bank account as feared by the See court, that without exact written records the community property presumption will be subverted because of the possibility that the asset was acquired with some community funds. There is, to paraphrase See, no acquisition which may have been made during the marriage. Whatever else we know about the Laurinda house in 1983, we know it was 100 percent Alan's separate property at that time.
Second, unlike the bank account at issue in See, the separate property home in this case is not inherently susceptible to a strict recordkeeping requirement. Necessarily, in the absence of an actual sale, any value assigned to a separate property home which later is transmuted into community property can only be an estimate, even if it may be a very precise estimate based on a written appraisal. That is a far cry from the bank record precision with which the See court was obviously concerned, where inexactitude would mean that the community would not receive credit for actual contributions it had made.
Third, a strict recordkeeping requirement to establish the value of separate real property later transmuted into community real property runs contrary to the clear legislative purpose behind Family Code section 2640. As our Supreme Court recently noted in In re Marriage of Walrath (1998) 17 Cal.4th 907 [72 Cal. Rptr.2d 856, 952 P.2d 1124] section 2640 was born of an attempt to "`avoid the inequity that may result in a case where property taken in joint tenancy form is divided equally between the spouses despite a showing that one spouse contributed a substantial portion of separate funds to the acquisition.'" (Walrath, supra, 17 Cal.4th at p. 915, quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 26 (1983-1984 Reg. Sess.) as amended Apr. 4, 1983, p. 4.)
The transmutation of one spouse's separate property house to community property is one of the most common occasions for Family Code section 2640 tracing. In light of the fact that an estimate of value is necessarily the best that can be achieved, imposition of a strict recordkeeping requirement  *843 itself a product of common law  would amount to nothing more than judicial repeal of section 2640.[2]
To put our third reason another way, in interpreting the word "trace" in Family Code section 2640, we must select an interpretation that "`"comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute."'" (In re Marriage of Walrath, supra, 17 Cal.4th at p. 918, quoting Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies (1997) 15 Cal.4th 213, 219 [61 Cal. Rptr.2d 638, 932 P.2d 210].) An interpretation which precludes a well-recognized means of establishing the value of real property in other contexts  the opinion of the owner  defeats rather than promotes the purpose of section 2640, which is to assure that separate contributions are reimbursed "off the top" of the community asset. (See Walrath, supra, 17 Cal.4th at p. 927 (conc. and dis. opn. of Baxter, J.).) We therefore conclude that the word "trace" as it appears in section 2640 entails no rigid requirement that a spouse submit authenticated written documentation establishing an exact value for real separate property later transmuted into community property.
And on that note, it is, course, well established that an owner is perfectly competent to testify as to the value of his or her own property. Evidence Code 813, subdivision (a)(2) could not be plainer: "(a) The value of property may be shown only by the opinions of any of the following: [¶] ... [¶] (2) The owner or the spouse of the owner of the property or property interest being valued." (See also In re Marriage of Hargrave (1985) 163 Cal. App.3d 346, 351 [209 Cal. Rptr. 764] ["... the law is that the owner of property is qualified to give his opinion of its value"]; Wade v. Lake County Title Co. (1970) 6 Cal. App.3d 824, 829 [86 Cal. Rptr. 182] ["An owner may testify competently as to the value of his property"]; In re S.S. (1995) 37 Cal. App.4th 543, 547 [43 Cal. Rptr.2d 768] ["a property owner's statements of value, ... `should be accepted as prima facie evidence of value'"].)

DISPOSITION
The judgment is reversed to the extent that it characterizes the Laurinda property as solely community. We will not, however, direct a new judgment *844 be entered based on Alan's proffered opinion as to value. It is possible that, on remand, Catherine herself may be able to present evidence that the Laurinda property had a lower value in 1983 than represented by Alan's opinion, and the trier of fact might side with her on the conflict. Either way, of course, there is still going to be a substantial amount of reimbursement under Family Code section 2640 due Alan.
The case is remanded for further proceedings on the value and reimbursement question. Alan shall also recover his costs on appeal.
Wallin, J., and Bedsworth, J., concurred.
NOTES
[1] The scenario of the transmutation of a separate property house into a community one should be distinguished from the case where property remains separate but commingled or community funds are used to make the payments. (Cf. In re Marriage of Higinbotham (1988) 203 Cal. App.3d 322, 328-330 [249 Cal. Rptr. 798].) The latter situation is functionally the same as a separate bank account into which commingled or community funds have been transferred, and therefore the rationale from the See case should still apply.
[2] In this light we must add that, in contrast to bank statements, homeowners often do not receive copies of written appraisals obtained by lenders at the time real property is refinanced. Thus while strict recordkeeping requirements make sense in the context of commingled bank accounts, they run contrary to practical reality when applied to separate real property later transmuted, as sometimes happens in a refinancing, to community property.